UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EVERLIGHT ELECTRONICS CO., LTD.,
and EMCORE CORPORATION,

                Plaintiff,

v.

NICHIA CORPORATION, and
NICHIA AMERICA CORPORATION,

                Defendants.

CIVIL ACTION NO. 12-CV-11758

Hon. John Corbett O'Meara

---

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT BY EVERLIGHT ELECTRONICS CO., LTD. AND FOR PATENT INFRINGEMENT BY EVERLIGHT ELECTRONICS CO., LTD. AND EMCORE CORPORATION, AND JURY DEMAND**

Plaintiffs Everlight Electronics Co., Ltd. ("Everlight") and Emcore Corporation ("Emcore") file this Complaint against Defendants Nichia Corporation and Nichia America Corporation (collectively, "Nichia"), wherein Everlight seeks a declaratory judgment of non-infringement, invalidity, and unenforceabilty of United States Patent Nos. 5,998,925 (the "'925 Patent") and 7,531,960 (the "'960 Patent") pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 *et seq*., and both Everlight and Emcore jointly seek a judgment of infringement by Nichia of U.S. Patent No. 6,653,215 (the "'215 Patent") pursuant to 35 U.S.C. §§ 271 and 281, and damages resulting therefrom pursuant to 35 U.S.C. § 284, and such other relief as the Court deems just and proper, and in support thereof allege as follows:

**The Parties**

1.      Everlight is a corporation organized and existing under the laws of Taiwan with a principal place of business at No. 6-8, Zhonghua Rd., Shulin Dist., New Taipei City, Taiwan 23860.  Everlight manufactures its light-emitting diode ("LED") products in Taiwan and, through a subsidiary, has sales offices in the United States in Texas and California.

2.      Emcore is a New Jersey corporation with a principal place of business at 10420 Research Road, SE, Albuquerque, New Mexico, 87123.  LED products incorporating Emcore's patented technology are offered nationwide, including in this district.

3.      Upon information and belief, Nichia Corporation is a corporation organized and existing under the laws of Japan with a principal place of business at 491 Oka, Kaminaka-Cho, Anan-Shi, TOKUSHIMA 774-8601, JAPAN.  Nichia Corporation conducts substantial and continuous business in this district and is subject to personal jurisdiction in this district.

4.      Upon information and belief, Nichia America Corporation is a subsidiary of Nichia Corporation in the United States with a principal place of business at 48561 Alpha Drive, Suite 100, Wixom, MI 48393.  Nichia America Corporation is headquartered in this district, conducts substantial and continuous business in this district and is subject to personal jurisdiction in this district.

**Jurisdiction and Venue**

5.      The claims for declaratory judgment arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

6.      The claims of patent infringement arise under 35 U.S.C. §§ 271 and 281.

7.      Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338 and 28 U.S.C. §§ 2201 and 2202.

8.      Venue in this district is proper under 28 U.S.C. § 1391(b) and (c).

**Patents-in-Suit**

9.      The '925 Patent, entitled "Light Emitting Device Having a Nitride Compound Semiconductor and a Phosphor Containing a Garnet Fluorescent Material," names on its face Yoshinori Shimizu, Kensho Sakano, Yasunobu Noguchi, and Toshio Moriguchi as inventors (the "Named Inventors") and states that it was issued on December 7, 1999 to assignee Nichia Kagaku Kogyo Kabushiki Kaisha (d/b/a Nichia Corporation) (Exhibit A).

10.      The '960 Patent, entitled "Light Emitting Device with Blue Light LED and Phosphor Components," names on its face Yoshinori Shimizu, Kensho Sakano, Yasunobu Noguchi, and Toshio Moriguchi as inventors and states that it was issued on May 12, 2009 to assignee Nichia Corporation (Exhibit B).

11.      Emcore is the owner by assignment and Everlight is the exclusive licensee, with the right to enforce, of the '215 entitled "Contact to N-GaN with Au Termination" which the United States Patent and Trademark Office lawfully and duly issued on November 25, 2003.  A true and correct copy of the '215 Patent is attached hereto as Exhibit C.

**Background**

12.      Everlight is a leading manufacturer and supplier of LED products, with customers around the world, including in this district.

13.      Everlight successfully competes against Nichia, who is also in the business of manufacturing and supplying LED products.

14.      Nichia has been aggressively pursuing Everlight and Everlight's customers through litigation in various forums around the world, including Japan, Germany, and Taiwan.

3

15.     For example, in October 2011, Nichia initiated an action against an Everlight customer, Tachibana Eletech Co., Ltd., in Tokyo District Court, Intellectual Property Division, alleging infringement of Nichia's Japanese Patent No. 4530094, which is a Japanese counterpart of the '960 Patent ("Tokyo Action").

16.     In addition, on April 18, 2012, Nichia initiated an action against Everlight in Germany for alleged infringement of Nichia's European Patent No. EP 0 936 682, which is a European counterpart of the '925 Patent ("German Action").

17.     The accused products in the Tokyo Action are Everlight's LEDs having Part Nos. GT3528 and 61-238, and the accused products in the German Action are Everlight's LEDs having Part No. 61-238.  Everlight supplies these and/or similar LEDs, such as 67-11/T1C-FV2W2F/2T, ELSH-F81M1-0CPGS-C3000, ELSH-F91C1-0CPGS-C5000, ELSH-J31M3-0CPGS-D3000, ELSH-J61C3-0CPGS-D5000, ELSW-F81M1-0CPGS-C3000, ELSW-J11C1-0CPGS-C5700, ELSW-J31M3-0CPGS-D3000, ELSW-J71C3-0CPGS-D5700, 234-15UTC/H5/S400-X10(TCI), 334-15/T2C1-FUWA/PR6(LP), 334-15/T2C3-FQSB/PR6(LP), 334-15/T2C5-FNQB/PR6(LP), 484-15-T5C9-F36E-T13-AM (S), 484-15-T5C9-F36E-T13-AM(L), and 65-21-B3T-1NL2M2C6A-2T8-AM, to its customers in the United States (collectively, "Everlight LED Products").

18.     The '925 Patent is the parent of the '960 Patent, and the '960 Patent is a division of the application that resulted in the '925 Patent.

19.     Nichia has also threatened litigation over several patents, including Japanese Patent No. 4530094, against other Everlight customers in Japan, including JFE, Charle, and Chip One Stop.

4

20.     Nichia also initiated a patent infringement action against Everlight in Taiwan, in which Everlight prevailed in November 2011.

21.     In addition to litigation matters, there are currently over 20 patent reexamination or opposition proceedings pending in several different countries, initiated by Everlight against Nichia.  The subject of these proceedings include Nichia patents related to the '925 and '960 Patents.

22.     Nichia also has a pattern of aggressively pursuing manufacturers, users and/or distributors of competitive LED products in the United States by asserting infringement of the '925 and/or '960 Patents against them.  Between 2005 and 2011, Nichia pursued at least four actions in the United States where it claimed infringement of the '925 Patent, and at least two actions in which the '960 Patent was asserted.

23.     Nichia has also threatened litigation against its competitors in press releases. Most recently, in April 2012, Nichia issued a press release regarding a suit over a related German counterpart patent, in which it asserted, "Nichia seeks to protect its patents and other intellectual property rights and takes actions against alleged infringers in any country where appropriate and necessary."

24.     Nichia's systematic and aggressive pursuit of Everlight, Everlight's customers, and other third parties in the LED industry through litigation has created a substantial and immediate dispute between Everlight and Nichia relating to the '925 and '960 Patents.

25.     Upon information and belief, Nichia has also made, used, offered to sell, and sold within the United States, and has imported into the United States, products that were made by the process of the '215 Patent, including but not limited to at least the following LED products: NCSW119A, NCSW119A-H3, NCSL119A-H3, NCSL119A-H1, NVSW119A, NVSW119A-

H3, NVSL119A-H3, NVSL119A-H1, NCSW219A, NCSW219A-H3, NCSL219A-H3, NCSL219A-H1, NVSW219A, NVSW219A-H3, NVSL219A-H3, NVSL219A-H1, and NVSL219AE (the "Infringing Nichia Products").

**Count I (By Everlight)**
**Declaratory Judgment of Non-Infringement of the '925 Patent**

26.     Everlight realleges and incorporates herein by reference Paragraphs 1 through 25 of this Complaint.

27.     Nichia has been systematically and aggressively pursuing Everlight, Everlight's customers, and third parties in the LED industry through litigation.

28.     Nichia has asserted in the Tokyo Action that Everlight's products infringe a Japanese patent related to the '925 Patent.  The U.S. counterpart of the Japanese patent asserted in the Tokyo Action is a division of the application that resulted in the '925 Patent.  Nichia has also asserted in the German Action that Everlight's products infringe a European counterpart to the '925 Patent.

29.     Nichia also aggressively asserted the '925 Patent against light product manufacturers, users and/or distributors in the United States of competitive LED products in at least four separate patent infringement actions in the United States.  The most recent of these actions concluded in or about April 2011.

30.     The Everlight LED Products do not infringe any valid and enforceable claim of the '925 Patent.

31.     Based on the facts alleged herein, and under all the circumstances, there is a substantial controversy between Everlight and Nichia of sufficient immediacy and reality to warrant the issuance of a declaratory judgment by this Court.

32.     Everlight is entitled to a declaratory judgment that Everlight has not infringed and is not now infringing, directly, contributorily, or by inducement, any valid and enforceable claim of the '925 Patent by manufacturing, importing, using, selling or offering for sale the Everlight LED Products.

33.     Everlight is also entitled to a declaratory judgment that Everlight's customers have not infringed and are not now infringing, directly, contributorily, or by inducement, any valid and enforceable claim of the '925 Patent by importing, using, selling or offering for sale  the Everlight LED Products, separately, or in combination with or upon incorporation into another device or system.

## Count II (By Everlight)
### Declaratory Relief for Invalidity of the '925 Patent

34.     Everlight realleges and incorporates herein by reference Paragraphs 1 through 33 of this Complaint.

35.     The '925 Patent is invalid because the purported inventions therein fail to meet the conditions of patentability specified in 35 U.S.C. §§ 102 and 103.  For example, the '925 Patent is invalid under 35 U.S.C. §§ 102 and 103 in light of prior art from, for example, Wustlich Opto-Elektronik /Wustlich Mikro-Elektronik.

36.     The '925 Patent is invalid for failure to meet the requirements of 35 U.S.C. § 112 because at least some of the claims of the '925 Patent are not enabled.  For one example, see paragraphs 39-111 below.

37.     Based on the facts alleged herein, and under all the circumstances, there is a substantial controversy between Everlight and Nichia of sufficient immediacy and reality to warrant the issuance of a declaratory judgment by this Court.

38.     Everlight is entitled to a declaratory judgment that the '925 Patent is invalid.

## Count III (By Everlight)
### Declaratory Relief for Unenforceability of the '925 Patent

39.     Everlight realleges and incorporates herein by reference Paragraphs 1 through 38 of this Complaint.

40.     The '925 Patent is unenforceable due to inequitable conduct and fraud during the prosecution of the '925 Patent.

### *Overview of Nichia's Fraud and Inequitable Conduct*

41.     As explained further below, upon information and belief, the '925 Patent describes purported phosphor compositions that Nichia claims to have made and reduced to practice before it filed the United States patent application that led to the '925 Patent.  In particular, Nichia claims to have made and reduced to practice working LEDs from the purported phosphors "$Y_3In_5O_{12}$:Ce" and "$Gd_3(Al_{0.5}\,Ga_{0.5})_5O_{12}$:Ce".  See '925 Patent at "Example 8" and "Example 12," respectively.  Upon information and belief, Nichia never could have made such phosphors because they are chemically unstable using the type of fabrication methods Nichia described in the '925 Patent.  Nonetheless, the '925 Patent claims to have made and reduced to practice working LEDs using such phosphors.  Upon information and belief, the claims are fictitious and were included by Nichia in the '925 Patent in an attempt to obtain United States patent protection beyond that which it had a lawful right to obtain.  Upon information and belief, the fictitious experimental results and claims were included not only in the two Nichia patents-in-suit (i.e., the '925 and '960 Patents) but over twenty (20) other Nichia patents and pending applications claiming priority to the '925 Patent and relating to phosphor technology (the "Phosphor Patent Family").  In addition, upon information and belief, Nichia's intent to deceive the United States Patent & Trademark Office ("PTO") and obtain patent protection beyond that which it had a lawful right to obtain is evidenced by Nichia's pattern and practice of including such fictitious

8

experimental results and claims in other United States patents outside the Phosphor Patent Family but still relating to compound semiconductor-based LED technology. These other patents include at least Nichia's U.S. Patent Nos. 5,306,662; U.S. 5,578,839; U.S. 5,747,832, U.S. 5,767,581 and other related patents disclosing substantially the same fictitious subject matter.

### *Background Regarding Nichia's Fraud and Inequitable Conduct*

42.     The named inventors on the face of the '925 Patent are Yoshinori Shimizu, Kensho Sakano, Yasunobu Noguchi, and Toshio Moriguchi. The '925 Patent lists the assignee as Nichia Kagaku Kogyu Kabushiki Kaisha, in Tokoshima, Japan.

43.     Upon information and belief, Yoshinori Shimizu, Kensho Sakano, Yasunobu Noguchi, and Toshio Moriguchi, and/or other persons who were substantively involved in the preparation or prosecution of the application that led to the '925 Patent (collectively "the Individuals With a Duty to Disclose") breached their duty of candor and good faith during prosecution of the '925 Patent.

44.     Upon information and belief, the Individuals With a Duty to Disclose breached their duty of candor and good faith by, among other things, failing to disclose to the PTO that the full scope of the claims they sought, and obtained, was not enabled. Upon information and belief, this failure to disclose led the PTO to believe that the full scope of the claims was enabled, even though it was not.

45.     Upon information and belief, the Individuals With a Duty to Disclose also breached their duty of candor and good faith by, among other things, misrepresenting to the PTO that certain experiments were performed and that certain results were actually obtained when, in fact, they were not. Upon information and belief, these fictitious experiments and false

misrepresentations led the PTO to believe that the full scope of Nichia's '925 Patent claims were enabled, even though they were not.

46.     Upon information and belief, the Individuals With a Duty to Disclose withheld information from the PTO and made misrepresentations to the PTO with the specific intent of deceiving the PTO in order to obtain broader patent protection to which Nichia was not lawfully entitled.

### *Materiality Re: Nichia's Inclusion of Fictitious Experiments in the '925 Patent*

47.     The misrepresentations and omissions regarding the fictitious experiments by the Individuals With a Duty to Disclose were material to patentability.

48.     Upon information and belief, the PTO would not have allowed the '925 Patent to issue but for the misrepresentations and omissions regarding the fictitious experiments.

49.     Upon information and belief, the '925 Patent's disclosure was insufficient to enable one of ordinary skill in the art to make, without undue experimentation, the purported phosphor compositions within the full scope of the claims.

50.     "Example 12" recited at column 31, lines 7-15 of the '925 Patent specification is an example of the fictitious experiments and misrepresentations used by the Individuals With a Duty to Disclose to obtain unlawful patent rights.

51.     "Example 12" describes purported LEDs "made in the same manner as in Example 1 except for using phosphor represented by general formula $Y_3In_5O_{12}:Ce$," rather than the phosphor of Example 1, which was of the general formula $(Y_{0.8}Gd_{0.2})_3Al_5O_{12}:Ce$.  '925 Patent at column 31, lines 8-10.

52.     The general formula of the purported phosphor of Example 12 of the '925 Patent includes indium (In) in substitution for aluminum (Al).

53.     Upon information and belief, $Y_3In_5O_{12}$:Ce is not a thermodynamically stable compound as described in Example 12 of the '925 Patent and is, therefore, fictitious.

54.     Accordingly, upon information and belief, the purported phosphor $Y_3In_5O_{12}$:Ce described in Example 12 of the '925 Patent was never made by Nichia.

55.     The '925 Patent states that "100 pieces of the light emitting diode of Example 12 were made." '925 Patent, column 31, lines 10-11.  The '925 Patent specification also states that "the light emitting diode of Example 12 showed luminance lower than that of the light emitting diodes of Example 1, [and] showed good weatherability comparable to that of Example 1 in life test."  Id. at column 31, lines 12-15.

56.     Upon information and belief, the experiments described in Example 12 were not performed by Nichia at the time it filed for the '925 Patent.

57.     Upon information and belief, the phosphor $Y_3In_5O_{12}$:Ce described in Example 12 was never made by named inventor Yoshinori Shimizu.

58.     Upon information and belief, the phosphor $Y_3In_5O_{12}$:Ce described in Example 12 was never made by named inventor Kensho Sakano.

59.     Upon information and belief, the phosphor $Y_3In_5O_{12}$:Ce described in Example 12 was never made by named inventor Yasunobu Noguchi.

60.     Upon information and belief, the phosphor $Y_3In_5O_{12}$:Ce described in Example 12 was never made by named inventor Toshio Moriguchi.

61.     Upon information and belief, the experimental results described in Example 12 were never obtained by Nichia at the time it filed for the '925 Patent.

62.     Upon information and belief, LEDs could not have been made using the phosphor of Example 12 and, therefore, could not have shown "luminance lower than that of the light

emitting diodes of Example 1" or "good weatherability comparable to that of Example 1 in life test," as Nichia claims in the '925 Patent at column 31, lines 7-15.

63.    Upon information and belief, the Individuals With a Duty to Disclose misrepresented to the PTO that a phosphor of the general formula $Y_3In_5O_{12}$:Ce was made and used in 100 LEDs.

64.    Upon information and belief, the fictitious experiments and results described in Example 12 were included in the '925 Patent in an attempt to obtain patent protection beyond that which Nichia had a lawful right to obtain.

65.    "Example 8" recited at column 26, line 65 - column 27, line 7 of the '925 Patent specification is another example of the fictitious experiments and misrepresentations used by the Individuals With a Duty to Disclose to obtain unlawful patent rights.

66.    "Example 8" describes purported LEDs "made in the same manner as in Example 1 except for using phosphor represented by general formula $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce which does not contain Y," rather than the phosphor of Example 1, which was of the general formula $(Y_{0.8}Gd_{0.2})_3Al_5O_{12}$:Ce.

67.    The general formula of the purported phosphor of Example 8 of the '925 Patent includes gadolinium (Gd) in substitution for yttrium (Y).

68.    Upon information and belief, $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce is not a thermodynamically stable compound as described in Example 8 of the '925 Patent and is, therefore, fictitious.

69.    Accordingly, upon information and belief, the purported phosphor $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce described in Example 8 of the '925 Patent was never made by Nichia.

70.    The '925 Patent states that "100 pieces of the light emitting diodes of Example 8 were made and measured for various characteristics."  '925 Patent at column 27, lines 2-3.  The

12

'925 Patent specification also states that the LED of Example 8 "showed good weatherability similar to that of Example 1 in life test." Id. at lines 6-7.

71.     Upon information and belief, the experiments described in Example 8 were not performed by Nichia at the time it filed for the '925 Patent.

72.     Upon information and belief, the phosphor $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce described in Example 8 was never made by named inventor Yoshinori Shimizu.

73.     Upon information and belief, the phosphor $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce described in Example 8 was never made by named inventor Kensho Sakano.

74.     Upon information and belief, the phosphor $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce described in Example 8 was never made by named inventor Yasunobu Noguchi.

75.     Upon information and belief, the phosphor $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce described in Example 8 was never made by named inventor Toshio Moriguchi.

76.     Upon information and belief, the experimental results described in Example 8 were never obtained by Nichia at the time it filed for the '925 Patent.

77.     Upon information and belief, LEDs could not have been made using the phosphor of Example 8 and, therefore, could not have "showed a low luminance, showed good weatherability similar to that of Example 1 in life test," as Nichia claims in the '925 Patent at column 27, lines 5-7.

78.     Upon information and belief, the Individuals With a Duty to Disclose misrepresented to the PTO that a phosphor of the general formula $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce was made and used in 100 LEDs.

13

79.     Upon information and belief, the fictitious experiments and results described in Example 8 were included in the '925 Patent in an attempt to obtain patent protection beyond that which Nichia had a lawful right to obtain.

80.     Each of the named inventors signed an oath in which they affirmed that they reviewed and understood the contents of the specification and claims in the patent.

81.     Upon information and belief, the specification that was the subject of the inventors' oath described fictitious experiments as if the experiments had been conducted and as if results had been obtained.

82.     Affirmative acts of egregious misconduct during prosecution are material to patentability.

83.     The phosphor described in Example 12 falls within the scope of at least claims 1, 14 and 23 of the '925 Patent.

84.     Claim 1 requires, among other things, a "phosphor [that] contains a garnet fluorescent material comprising 1) at least one element selected from the group consisting of Y, Lu, [Sc], La, Gd and Sm, and 2) at least one element selected from the group consisting of Al, Ga and In, and being activated with cerium."

85.     Claim 14 requires, among other things, a "coating material [that] contains at least one element selected from the group consisting of Y, Lu, Sc, La, Gd and Sm, at least one element selected from the group consisting of Al, Ga and In and a phosphor made of garnet fluorescent material activated with cerium."

86.     Claim 23 requires, among other things, a "phosphor [that] contains garnet fluorescent material activated with cerium which contains at least one element selected from the

group consisting of Y, Lu, Sc, La, Gd and Sm, and at least one element selected from the group consisting of Al, Ga and In."

87.     Upon information and belief, a phosphor of the general formula $Y_3In_5O_{12}$:Ce could not have been made by a person of ordinary skill in the art without undue experimentation.

88.     Upon information and belief, a phosphor using indium, within the scope of at least claims 1, 14 and 23 of the '925 Patent, could not have been made by a person of ordinary skill in the art without undue experimentation.

89.     The phosphor described in Example 8 falls within the scope of at least claims 1, 14 and 23 of the '925 Patent.

90.     Upon information and belief, a phosphor of the general formula $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce could not have been made by a person of ordinary skill in the art without undue experimentation.

91.     Upon information and belief, a phosphor using gadolinium, within the scope of at least claims 1, 14 and 23 of the '925 Patent, could not have been made by a person of ordinary skill in the art without undue experimentation.

92.     Upon information and belief, the Individuals With a Duty to Disclose failed to disclose to the PTO that the full scope of the claims, including claims 1, 14 and 23, was not enabled.

93.     Upon information and belief, the Individuals With a Duty to Disclose committed affirmative acts of egregious misconduct, including by using fictitious examples in the specification and seeking patent protection that covered such fictitious matter.

94.     Upon information and belief, at least claims 1, 14 and 23 of the '925 Patent would not have issued but for the misrepresentations and omissions of the Individuals With a Duty to Disclose.

### *Intent to Deceive the United States Patent & Trademark Office*

95.     Upon information and belief, the misrepresentations and omissions by the Individuals With a Duty to Disclose were intentional and were intended to deceive the PTO.

96.     Upon information and belief, the Individuals With a Duty to Disclose knew that certain experiments described in the '925 Patent had not been conducted.

97.     Upon information and belief, the Individuals With a Duty to Disclose knew that certain results reported in the Examples in the '925 Patent specification had not been obtained.

98.     Upon information and belief, the Individuals With a Duty to Disclose intentionally misrepresented to the PTO that certain experiments were conducted, when they were not.

99.     Upon information and belief, the Individuals With a Duty to Disclose intentionally misrepresented to the PTO that certain results were obtained, when they were not.

100.    Upon information and belief, the Individuals With a Duty to Disclose knew that at least Example 8 and Example 12 described experiments that had not been conducted and results that had not been obtained.

101.    Upon information and belief, the Individuals With a Duty to Disclose included the Examples in the specification in an attempt to support a request for patent protection.

102.    Upon information and belief, the Individuals With a Duty to Disclose intentionally failed to disclose to the PTO that certain fictitious Examples in the specification described experiments that had not been conducted.

103.    Upon information and belief, the Individuals With a Duty to Disclose intentionally failed to disclose to the PTO that the full scope of the patent protection that they sought was not enabled.

104.    The Examples and Comparative Examples in the '925 Patent's specification were carried over and now exist in the specification of other U.S. patents in Nichia's Phosphor Patent Family, namely: U.S. 6,069,440; U.S. 6,608,332; U.S. 6,614,179; U.S. 7,026,756; U.S. 7,071,616; U.S. 7,126,274; U.S. 7,215,074; U.S. 7,329,988; U.S. 7,362,048; U.S. 7,531,960; U.S. 7,682,848; U.S. 7,855,092; U.S. 7,901,959; U.S. 7,915,631; U.S. 7,943,941; U.S. 7,968,866; and U.S. 7,969,090.

105.    The Examples and Comparative Examples found in the '925 Patent's specification will carry over and be present in the specification of the U.S. patents that issue from several pending U.S. patent applications in Nichia's Phosphor Patent Family:  U.S. App. 2009/315,014; U.S. App. 2010/001,258; U.S. App. 2010/019,270; U.S. App. 2010/117,516; and U.S. App. 2011/062,864.

106.    Upon information and belief, Nichia has included fictitious experiments and experimental data in other U.S. patents unrelated to the '925 Patent.

107.    Upon information and belief, Nichia has included fictitious experimental data in at least the following patents: U.S. Patent Nos. 5,306,662; U.S. 5,578,839; U.S. 5,747,832 and U.S. 5,767,581 and other related patents disclosing substantially the same fictitious subject matter.

108.    The single most reasonable inference to be drawn from the inclusion of fictitious examples in the '925 Patent is that the Individuals With a Duty to Disclose intended to deceive the PTO in order to obtain patent protection to which they were not entitled.

17

109.     The single most reasonable inference to be drawn from the failure to disclose the fact that the full scope of the claims is not enabled in the '925 Patent is that the Individuals With a Duty to Disclose intended to deceive the PTO in order to obtain patent protection to which they were not entitled.

110.     Based on the facts alleged herein, and under all the circumstances, there is a substantial controversy between Everlight and Nichia of sufficient immediacy and reality to warrant the issuance of a declaratory judgment by this Court.

111.     Everlight is entitled to a declaratory judgment that the '925 Patent is unenforceable due to fraud and inequitable conduct before the United States PTO.

## Count IV (By Everlight)
### Declaratory Judgment of Non-Infringement of the '960 Patent

112.     Everlight realleges and incorporates herein by reference Paragraphs 1 through 111 of this Complaint.

113.     Nichia has been systematically and aggressively pursuing Everlight, Everlight's customers, and other third-parties in the LED industry through litigation.

114.     Nichia has asserted in the Tokyo Action that Everlight's products infringe a Japanese counterpart of the '960 Patent, and Nichia has asserted in the German Action that Everlight's products infringe a European counterpart of the '925 Patent.

115.     Nichia also aggressively asserted the '960 Patent against lighting product manufacturers, users and/or distributors in the United States in at least two separate patent infringement actions.  The most recent of these actions concluded in or around April 2011.

116.     The Everlight LED Products do not infringe any valid and enforceable claim of the '960 Patent.

18

117.    Based on the facts alleged herein, and under all the circumstances, there is a substantial controversy between Everlight and Nichia of sufficient immediacy and reality to warrant the issuance of a declaratory judgment by this Court.

118.    Everlight is entitled to a declaratory judgment that Everlight has not infringed and is not now infringing, directly, contributorily, or by inducement, any valid and enforceable claim of the '960 Patent by manufacturing, importing, using, selling or offering for sale the Everlight LED Products.

119.    Everlight is also entitled to a declaratory judgment that Everlight's customers have not infringed and are not now infringing, directly, contributorily, or by inducement, any valid and enforceable claim of the '960 Patent by importing, using, selling or offering for sale the Everlight LED Products, separately, or in combination with or upon incorporation into another device or system.

## Count V (By Everlight)
### Declaratory Relief for Invalidity of the '960 Patent

120.    Everlight realleges and incorporates herein by reference Paragraphs 1 through 119 of this Complaint.

121.    The '960 Patent is invalid because the purported inventions therein fail to meet the conditions of patentability specified in 35 U.S.C. §§ 102, 103 and 112.

122.    The '960 Patent is invalid because the purported inventions therein fail to meet the conditions of patentability specified in 35 U.S.C. §§ 102 and 103.  For example, the '960 Patent is invalid under 35 U.S.C. §§ 102 and 103 in light of, but not limited to, U.S. Patent No. 6,600,175.

123.    The '960 Patent is invalid for failure to meet the requirements of 35 U.S.C. § 112 because several of the features claimed are not disclosed in such a way as to enable one of

ordinary skill in the art to execute them without undue experimentation.  For example, no disclosure of the '960 Patent would enable one of ordinary skill in the art to implement the increasing/tapering phosphor concentration stated in claims 1, 2, 3, 22, and 23.  No disclosure in the '960 Patent would enable one of ordinary skill in the art to implement the independent arrangement of phosphor particles stated in claim 5.  And no disclosure in the '960 Patent would enable one of ordinary skill in the art to implement the "controlled particle size distribution" stated in claim 14.

124.    Based on the facts alleged herein, and under all the circumstances, there is a substantial controversy between Everlight and Nichia of sufficient immediacy and reality to warrant the issuance of a declaratory judgment by this Court.

125.    Everlight is entitled to a declaratory judgment that the '960 Patent is invalid.

**Count VI (By Everlight)**
**Declaratory Relief for Unenforceability of the '960 Patent**

126.    Everlight realleges and incorporates herein by reference Paragraphs 1 through 125 of this Complaint.

127.    The original application in the chain that ultimately resulted in the '960 Patent was application No. 08/902,725 which resulted in issuance of the '925 Patent.  The '960 Patent issued after a series of divisional applications in the same chain.

128.    The '925 Patent and '960 Patent have substantially the same specification (excluding the claims).

129.    The '925 Patent and the '960 Patent list the same four individuals as inventors.

130.    The '925 Patent and '960 Patent contain substantially the same fictitious examples, and therefore both falsely represent that certain experiments were performed and results were obtained.

131.    The '925 Patent and the '960 Patent purport to protect overlapping subject matter.

132.    The inequitable conduct that renders the '925 Patent unenforceable has an immediate and necessary relation to enforcement of the '960 Patent against Everlight.

133.    The inequitable conduct that renders the '925 Patent unenforceable also infects the '960 Patent (as well as the other patents in the same family), rendering it unenforceable.

134.    Based on the facts alleged herein, and under all the circumstances, there is a substantial controversy between Everlight and Nichia of sufficient immediacy and reality to warrant the issuance of a declaratory judgment by this Court.

135.    Everlight is entitled to a declaratory judgment that the '960 Patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office.

<u>Count VII (By Everlight and Emcore)</u>
**Infringement of the '215 Patent**

136.    Everlight and Emcore reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 8, 11 and 25.

137.    Emcore owns the '215 Patent and has owned it throughout the period of Defendant's infringing acts.

138.    Nichia Corporation and Nichia America Corporation have directly infringed the '215 Patent, at least under 35 U.S.C. § 271(g), by importing, offering to sell, selling, and using the Infringing Nichia Products in the United States.

139.    Nichia Corporation has indirectly infringed the '215 Patent, at least under 35 U.S.C. § 271(b), by inducing Nichia America Corporation to import, offer to sell, sell, and use the Infringing Nichia Products in the United States.

140.    Nichia Corporation has indirectly infringed the '215 Patent, at least under 35 U.S.C. § 271(b), by inducing its customers to import, offer to sell, sell, and use the Infringing Nichia Products and products containing the Infringing Nichia Products in the United States.

141.    Nichia America Corporation is a subsidiary of Nichia Corporation .

142.    Nichia Corporation uses Nichia America Corporation's facilities as "sales offices" to import and sell its products in the United States.

143.    At least since April 2012, Nichia Corporation has been aware of the '215 Patent.

144.    At least since April 2012, Nichia Corporation has been aware of the allegations of infringement of the '215 Patent by their products, including but not limited to those listed in Paragraph 25.

145.    Upon information and belief, Nichia Corporation is aware that the method used to manufacture the Infringing Nichia Products infringes the '215 Patent.

146.    As a result, at least since April 2012, Nichia Corporation has acted with the intent to induce others to infringe the '215 Patent and continues to so act.

147.    Upon information and belief, Nichia will continue to infringe the '215 Patent unless and until they are enjoined by this Court.

148.    Nichia has caused, and will continue to cause, Plaintiffs irreparable injury and damages by infringing the '215 Patent.  Plaintiffs will suffer further irreparable injury, for which they have no adequate remedy at law, unless and until Nichia is enjoined from infringing the '215 Patent.

**Prayer for Relief**

WHEREFORE, Everlight respectfully requests that this Court enter a Judgment and Order:

A.      Declaring United States Patent Nos. 5,998,925 and 7,531,960 invalid;

B.      Declaring United States Patent Nos. 5,998,925 and 7,531,960
unenforceable;

C.      Declaring that Everlight has not infringed and is not now infringing,
directly, contributorily, or by inducement, any valid and enforceable claim
of United States Patent Nos. 5,998,925 and 7,531,960;

D.      Declaring that Everlight's customers have not infringed and are not now
infringing, directly, contributorily, or by inducement, any valid and
enforceable claim of United States Patent Nos. 5,998,925 and 7,531,960
by importing, using, selling or offering for sale the Everlight LED
Products, separately, or in combination with or upon incorporation into
another device;

E.      Preliminarily and permanently enjoining Nichia from commencing or
proceeding with any legal action arising out of United States Patent Nos.
5,998,925 and 7,531,960 against Everlight or any of Everlight's customers;

F.      Declaring this suit exceptional under 35 U.S.C. § 285 due to Nichia's
conduct, and awarding Everlight its reasonable attorneys' fees, and cost of
this action; and

G.      Awarding Everlight such other and further relief as this Court may deem
just and proper.

And WHEREFORE, Everlight and Emcore respectfully request that this Court enter a

Judgment and Order as follows:

H.      Nichia has infringed the '215 Patent;

23

I.      Pursuant to 35 U.S.C. § 283, a preliminary and permanent injunction enjoining Nichia and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them from infringing the '215 Patent;

J.      Pursuant to 35 U.S.C. § 284, an award to Everlight and Emcore of damages adequate to compensate Everlight and Emcore for infringement of the '215 Patent by payment of not less than a reasonable royalty on Nichia's sales of infringing products, and including lost profits, together with pre-judgment and post-judgment interest and costs;

K.      Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional case, and an award to Everlight and Emcore of their reasonable costs and attorneys' fees; and

L.      That Everlight and Emcore be granted such other and further relief as the Court deems just and proper.

            RESPECTFULLY SUBMITTED,

            By:     s/A. Michael Palizzi
                    A. Michael Palizzi (P47262)
                    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
                    150 West Jefferson, Ste. 2500
                    Detroit, Michigan 48226
                    (313) 963-4620
                    palizzi@millercanfield.com

Dated:  June 18, 2012      *Attorneys for Plaintiffs Everlight Electronics Co., Ltd. and Emcore Corporation*

                    David Radulescu, Esq.
                    Anastasia Fernands, Esq.
                    Tigran Vardanian, Esq.
                    Jeffrey Fisher, Esq.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY   10010-1601
(212) 849-7000
davidradulescu@quinnemanuel.com
anastasiafernands@quinnemanuel.com
tigranvardanian@quinnemanuel.com
jeffreyfisher@quinnemanuel.com

Dated:  June 18, 2012       *Attorneys for Plaintiff Everlight Electronics Co., Ltd.*

By:      s/ Michael A. Tomasulo
         Michael A. Tomasulo, Esq.
         DICKSTEIN SHAPIRO, LLP
         2049 Century Park East, Suite 700
         Los Angeles, CA 90067-3109
         (310) 772-8342
         tomasulom@dicksteinshapiro.com

Dated:  June 18, 2012       *Attorneys for Plaintiff Emcore Corporation*


## JURY DEMAND

Everlight and Emcore respectfully demands a trial by jury on each and every issue,

question, and/or count so triable.

RESPECTFULLY SUBMITTED,

By:      s/A. Michael Palizzi
         A. Michael Palizzi (P47262)
         MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
         150 West Jefferson, Ste. 2500
         Detroit, Michigan 48226
         (313) 963-4620
         palizzi@millercanfield.com

Dated:  June 18, 2012       *Attorneys for Plaintiffs Everlight Electronics Co., Ltd. and*
                            *Emcore Corporation*

David Radulescu, Esq.
Anastasia Fernands, Esq.
Tigran Vardanian, Esq.
Jeffrey Fisher, Esq.
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY   10010-1601
(212) 849-7000
davidradulescu@quinnemanuel.com
anastasiafernands@quinnemanuel.com
tigranvardanian@quinnemanuel.com
jeffreyfisher@quinnemanuel.com

Dated:  June 18, 2012          *Attorneys for Plaintiff Everlight Electronics Co., Ltd.*


By:     s/ Michael A. Tomasulo
        Michael A. Tomasulo, Esq.
        DICKSTEIN SHAPIRO, LLP
        2049 Century Park East, Suite 700
        Los Angeles, CA 90067-3109
        (310) 772-8342
        tomasulom@dicksteinshapiro.com

Dated:  June 18, 2012          *Attorneys for Plaintiff Emcore Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have appeared in this matter are being served with a copy of this document via the Court's CM/ECF system on June 18, 2012.

                              s/ A. Michael Palizzi