UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVERLIGHT ELECTRONICS CO., LTD.,
and EMCORE CORPORATION,

                                  Civil Action No.12-cv-11758
           Plaintiffs and         HONORABLE GERSHWIN A. DRAIN
           Counter-Defendants,
v.

NICHIA CORPORATION, and
NICHIA AMERICA CORPORATION,

           Defendants and
           Counter-plaintiffs,

v.

EVERLIGHT AMERICAS, INC.,

           Defendants.
_____/

## OPINION AND ORDER GRANTING NICHIA CORPORATION'S MOTION TO DISMISS EVERLIGHT'S CLAIMS FOR DECLARATORY JUDGMENT OF UNENFORCEABILITY OF NICHIA'S PATENTS [#24]

I.      Introduction

Plaintiff, Everlight Electronics Co., Ltd. ("Everlight"), filed the instant action seeking

a declaratory judgment of non-infringement, invalidity, and unenforceability of Defendant

Nichia Corporation's ("Nichia") United States Patent Nos. 5,998,925 (the "'925 Patent") and

7,531,960 (the "'960 Patent") pursuant to the Declaratory Judgment Act, 28 U.S.C. § §

2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq.  Everlight

and Plaintiff Emcore Corporation ("Emcore") also seek a judgment of infringement against

Nichia and its subsidiary, Defendant Nichia America Corporation ("Nichia America"),[1] of United States Patent No. 6,653,215 (the "'215" Patent") pursuant to 35 U.S.C. §§ 271 and 281, and damages resulting therefrom.

Presently before the court is Nichia's motion to dismiss Everlight's claims for declaratory judgment of unenforceability of Nichia's '925 and '960 Patents (the "patents-in-suit"), counts III and VI of the Amended Complaint.[2]  Nichia argues that Everlight is unable to raise any meritorious defenses to its infringement of Nichia's patents-in-suit –two patents in Nichia's patent portfolio encompassing the field of high brightness LED technology. Therefore, Everlight resorts to the "common litigation tactic" of alleging inequitable conduct during procurement of Nichia's patents-in-suit to support its contention that the patents are unenforceable.  Due to the abusive use of this defense, the Federal Circuit recently tightened the pleading standards for alleging inequitable conduct in <u>Exergen Corp. v. Wal-Mart Stores, Inc</u>., 575 F.3d 1312 (Fed. Cir. 2009) and <u>Therasense, Inc. v. Becton, Dickinson & Co.</u>, 649 F.3d 1276 (Fed. Cir. 2011).

Nichia contends that Everlight's inequitable conduct allegations are the type of overplayed and overblown allegations that <u>Therasense</u> and <u>Exergen</u> sought to curb by tightening the standard for alleging inequitable conduct.  Thus, dismissal of these claims is warranted out of fairness to Nichia so that this matter can proceed without the additional

---

[1]  On July 23, 2012, counts I-VI against Nichia America were dismissed by stipulated order.  <u>See</u> Dkt. No. 27.

[2]  On June 18, 2012, a stipulated order regarding the filing of amended complaint and response thereto was entered by the court.  <u>See</u> Dkt. No. 21.  The order states that counsel for the parties discussed Defendants' contemplated motion to dismiss and the counts in Everlight's Complaint and to avoid motion practice, Nichia agreed to accept service of process, waive any defense based on insufficient service and Plaintiffs agreed to file an Amended Complaint.  <u>Id.</u> at 1.

cost and distraction of Everlight's malicious allegations.  Pursuant to this court's local rules, it is hereby ordered that the motions be resolved on the briefs submitted. <u>See</u> E.D. Mich. L.R. 7.1(f)(2)

      <u>II.</u>    <u>Factual Background</u>

Everlight is a corporation organized and existing under the laws of Taiwan and it is a leading manufacturer of light-emitting diode ("LED") products with customers around the world. <u>See</u> Am. Comp., ¶¶ 1, 12.   Nichia, a Japanese corporation, is also in the business of manufacturing and supplying LED products.  <u>Id</u>., ¶¶  3, 13.

The '925 Patent was issued on December 7, 1999 to assignee Nichia and is entitled "Light Emitting Device Having a Nitride Compound Semiconductor and a Phosphor Containing a Garnet Fluorescent Material," listing Yoshinori Shimizu, Kensho Sakano, Yasunobu Noguchi, and Toshio Moriguchi as the inventors of the patent. <u>Id</u>., ¶ 9. The '960 Patent was issued on May 12, 2009 to assignee Nichia and is entitled "Light Emitting Device with Blue Light LED and Phosphor Components," and names Yoshinori Shimzu, Kensho Sakano, Yasunobu Noguchi, and Toshio Moriguchi as the inventors of the patent. <u>Id</u>., ¶ 10.  The '925 Patent is the parent of the '960 Patent, and the '960 Patent is a division of the application that resulted in the '925 Patent.  <u>Id</u>., ¶ 18.  Plaintiff Emcore is the owner by assignment, and Everlight is the exclusive licensee, of the '215 Patent, issued on November 25, 2003, entitled "Contact to N-GaN with Au Termination."[3]  <u>Id</u>., ¶ 11.

Plaintiffs allege that in 2005, Nichia began systematically and aggressively pursuing Everlight and its customers through litigation in various forums, including courts in the

---

    [3]   Plaintiffs allege infringement of the '215 Patent, however this claim is irrelevant to the disposition of the present motion.

United States, as well as in Japan, Germany, and Taiwan alleging infringement of Nichia's Japanese Patent No. 4530094, a Japanese counterpart of the '960 Patent, and infringement of Nichia's European Patent No. EP 0 936 682, a European counterpart of the '925 Patent.  Id., ¶¶ 14-16, 22, 27-29.  Nichia has also filed patent infringement actions concerning Nichia's patents-in-suit against manufacturers, users, and/or distributors of competitive LED products in the United States.  Id., ¶ 22.  Additionally, Everlight has initiated over 20 patent reexamination proceedings concerning Nichia's patents-in-suit, which are currently pending in several different countries.  Id., ¶ 21.  According to Everlight, Nichia's systematic and aggressive pursuit of Everlight, its customers and other third parties in the LED industry through litigation has created a substantial and immediate dispute between Everlight and Nichia's patents-in-suit.

III.   Law & Analysis

A.   Standard of Review

Federal Rule of Civil Procedure12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  Ass'n of Cleveland Fire

Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Id. at 679.

B.    Inequitable Conduct

  i.    Introduction

Nichia moves to dismiss counts III and VI which seek a declaratory judgment that Nichia's patents-in-suit are "unenforceable due to Nichia's fraud and inequitable conduct before the United States PTO [Patent and Trademark Office]." The crux of Nichia's argument is that Everlight fails to meet the pleading standard for inequitable conduct in light of the Federal Circuit's decisions in Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312 (Fed. Cir. 2009) and Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276

-5-

(Fed. Cir. 2011).

Nichia raises three arguments in support of its contention that Everlight has failed to meet the rigorous pleading standards for alleging inequitable conduct, a defense that the Federal Circuit has found to be "overplayed, []appearing in nearly every patent suit" which "plague[s] not only the courts but also the entire patent system." Therasense, 649 F.3d at 1289. First, Everlight fails to identify who committed the inequitable conduct before the PTO. Further, Everlight fails to identify why the alleged misrepresentations are material and how the patent examiner would have used this information to assess the patentability of the subject patents. Lastly, Everlight does not allege sufficient facts to support an inference of specific intent to deceive during the prosecution of Nichia's patents-in-suit.

       ii.    Applicable Law

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." Therasense, 649 F.3d at 1287. Both elements-intent and materiality-must be established by clear and convincing evidence. Id. The Exergen court held that "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Exergen, 575 F.3d at 1327.

While "knowledge" and "intent" may be alleged generally, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." Id. at 1328-29.

-6-

To adequately plead materiality, the allegations must "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." Id. at 1329-30. "[A]ffirmative representations by the patentee, in contrast to misleading omissions, are more likely to be regarded as material." Hoffmann-La Roche, Inc. v. Promega Corp., 323 F.3d 1354, 1367 (Fed. Cir. 2003).

      iii.   Claims III and VI

Everlight's pleading identifies alleged falsehoods contained in Nichia's patents-in-suit, specifically "purported phosphor compositions that Nichia claims to have made and reduced to practice" before filing its application that led to the '925 Patent. Am. Compl., ¶ 41.

> In particular, Nichia claims to have made and reduced to practice working LEDs from the purported phosphors "$Y_3In_5O_{12}$:Ce" and "$Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce." See '925 Patent, Exs. 8 and 12 respectively. Upon information and belief, Nichia never could have made such phosphors because they are chemically unstable using the type of fabrication methods Nichia described in the '925 Patent.

Id. Both patents-in-suit disclose the alleged invention of light-emitting diodes using phosphors containing indium and gadolinium, where indium is used as a full substitute for aluminum and gadolinium is used as a full substitute for yttrium in the paradigm yttrium-aluminum-garnet phosphor structure. See '925 Patent, 10:17-35, 26:40-50, 30:45-54, Claims 1, 14, 23; '960 Patent, 26:65-27:7, 31:7-15. In example 12 of the '925 Patent, the inventors represent that they made 100 pieces of LEDs "using phosphor represented by general formula "$Y_3In_5O_{12}$:Ce and, similarly in example 8, they claim to have made 100 pieces of LEDS "using phosphor represented by general formula $Gd_3(Al_{0.5}Ga_{0.5})_5O_{12}$:Ce."

See Am. Compl., ¶¶ 41, 55, 70, 128, 130.  Nichia's patents-in-suit  discuss the results of "life" testing of these actual pieces purportedly made by the inventors and compare their levels of luminance and weatherability with LEDs made in accordance with the paradigm yttrium-aluminum-garnet phosphor structure.  Id.  The independent claims of the '925 Patent expressly cover within their scope LEDs using a phosphor where indium is fully substituted for aluminum and/or where gadolinium is fully substituted for yttrium.  Id., ¶¶ 83-6, 89.

Further, Everlight alleges that persons working for Nichia have a pattern and practice of submitting falsehoods to the PTO in order to obtain patent protection beyond that which Nichia had a lawful right to obtain.  Specifically, the Amended Complaint states:

> Upon information and belief, the fictitious experimental results and claims were included not only in the two Nichia patents-in-suit . . . but over twenty (20) other Nichia patents and pending applications claiming priority to the '925 Patent and relating to phosphor technology (the "Phosphor Patent Family").  In addition, upon information and belief, Nichia's intent to deceive the United States Patent & Trademark Office ("PTO") and obtain patent protection beyond that which it had a lawful right to obtain is evidenced by Nichia's pattern and practice of including such fictitious experimental results and claims in other United States patents outside the Phosphor Patent Family but still relating to compound semi-conductor-based LED technology.  These other patents include at least Nichia's U.S. Patent Nos. 5,306,662; U.S. 5,747,832, U.S. 5,767,581.

Am. Compl., ¶ 41.

### iv.   Identity of the Actor Engaged in Misconduct before the PTO

Nichia first argues that Everlight's inequitable conduct allegations are deficient because the pleading identifies the "who" only as "Yoshinori Shimzu, Kensho Sakano, Yasunobu Noguchi, Toshio Moriguchi, and/or other persons who were substantially involved in the preparation or prosecution of the application that led to the '925 Patent . .

-8-

. .” Am. Compl., ¶ 43.  According to Nichia, this all-encompassing identification of the entire universe of actors is precisely the type of overbroad allegation that the <u>Exergen</u> court ruled insufficient as a matter of law. In <u>Exergen</u>, the court concluded that the district court correctly denied the defendant's motion to amend its answer to allege that the patents-in-suit are unenforceable due to inequitable conduct.  <u>Exergen</u>, 575 F.3d at 1316.  The <u>Exergen</u> court relied on the fact that the proposed pleading referred "generally to 'Exergen, its agents and/or attorneys' . . . but fails to name the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it."  <u>Id</u>. at 1329.

Everlight argues that the Amended Complaint clearly identifies the actors who participated in the alleged misconduct during the prosecution of the '925 Patent, specifically, the inventors and the patent prosecutors.  Everlight relies on the fact that during the prosecution of both of Nichia's patents-in-suit, each of the inventors signed a declaration confirming that he or she understood the contents of the specification and represented that all of the statements in the specification were true.  The relevant portion of the declaration states:

> I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Plfs.' Br. in Opp., Ex. H.  Therefore, because the falsehoods regarding the production and testing of the LEDs using fictitious phosphors are unmistakable on the face of Nichia's

patents-in-suit, each of the inventors engaged in affirmative deception by signing such a declaration. Everlight also relies on the allegations concerning Nichia's similar misconduct related to the prosecution and preparation of other patents related to phosphor technology. Everlight theorizes that they have sufficient justification for including Nichia's patent prosecutors as an additional group of actors responsible for the misconduct before the PTO.

The Court is not persuaded that Everlight has identified the "who" of the material misrepresentations because they have not identified "the specific individual associated with the filing or prosecution of [Nichia's patents-in-suit] who both knew of the material information and deliberately withheld or misrepresented it." Exergen, 575 F.3d at 1329. Everlight's reliance on the inventors' declaration does not provide sufficient facts for this Court to infer that a specific inventor had the requisite knowledge of the alleged falsity set forth in examples 8 and 12 of the '925 Patent. The inventors do not declare that they have knowledge of all the information set forth in the '925 Patent specification, rather they attest "that all statements made herein **of my own knowledge** are true and that all statements made on information and belief are believed to be true . . . ." Plfs.' Br. in Opp., Ex. H (emphasis added). Allegations similar to Everlight's allegations were found to be insufficient under Exergen in Mitsubishi Heavy Indus., Ltd. v. GE, No. 10-cv-812, 2012 U.S. Dist. LEXIS 32314, *4-7 (M.D. Fla. Mar. 12, 2012).

In Mitsubishi Heavy, the court concluded that naming the inventors and/or the attorneys and agents involved in the preparation or prosecution of the subject patent was insufficient because the court could not determine who was involved in the deceptive conduct. Mitsubishi Heavy, 2012 U.S. Dist. LEXIS 32314, at *4-6. The Court finds the

-10-

analysis in <u>Mitsubishi Heavy</u> to be relevant to the issue herein:

> The double 'and/or' conjunction is too often used by lawyers trying to cover all bases. Its use often has unintended consequences. Through the "and" part of the conjunction, GE has managed to lump the named inventors, attorneys, and agents together under the title 'Applicants,' and through the 'or' portion GE has disjoined them; the result is that GE has failed to specifically identify who is guilty of misconduct.
>
> *                    *                    *
>
> The Eighth Defense does not attribute a particular act or statement to a specific individual but instead refers to 'Applicants.' Moreover, a strict application of the 'or' alternative of the double conjunction in this case results in an allegation that either the named inventors or some other individual or individuals engaged in deceptive conduct. The other individual or individuals, who remain unnamed, are perhaps the only ones to have engaged in the suspect behavior. Under this construction, GE certainly cannot be said to have made an allegation against a particular person.
>
> *                    *                    *
>
> GE's allegations as to who committed the acts of misrepresentation and omission in the Amended Counterclaim and Eighth Defense claiming inequitable conduct are impermissibly vague. By broadly referring to all those involved in the preparation and prosecution of the '185 patent, GE has not met its obligation to specifically identify those who both knew of the material information and deliberately withheld or misrepresented it.

<u>Mitsubishi Heavy</u>, 2012 U.S. Dist. LEXIS 32314, at *5-7. Everlight does not indicate how

<u>Mitsubishi Heavy</u> is distinguishable from the present matter. Thus, Everlight has failed to

set forth the requisite factual allegations as to "who" had actual knowledge of the false

testing and misrepresented this to the PTO, a requirement for pleading inequitable conduct

under <u>Exergen</u>.

> <u>v.</u>     <u>Materiality and Specific Intent to Deceive</u>

Nichia next argues that Everlight's inequitable conduct allegations fail to allege "but-

for" materiality, as well as fail to allege specific intent to deceive the PTO. The central

-11-

feature of Everlight's inequitable conduct allegations is that two of the twelve specific examples set forth in the '925 Patent were not actually produced because they are "chemically unstable using the type of fabrication methods described in the '925 Patent." Am. Compl., ¶ 41.   Everlight provides no facts to support the assertion that these two examples are chemically unstable.   Also problematic is the fact that Everlight does not allege that the patent examiner was misled by the two examples.   Everlight provides only conclusory statements that, "[u]pon information and belief, at least claims 1, 14 and 23 of the '925 Patent would not have issued but for the misrepresentation and omissions of the Individuals With a Duty to Disclose." Id., ¶ 94.   The Amended Complaint states that "[t]he phosphor described in Example 12 falls within the scope of at least claims 1, 14 and 23 of the '925 Patent" and "[t]he phosphor described in Example 8 falls within the scope of at least claims1, 14 and 23 of the '925 Patent." Am. Compl., ¶¶ 83, 89.   Thus, according to Everlight, "the Individuals With a Duty to Disclose failed to disclose to the PTO that the full scope of the claims, including claims 1, 14 and 23, was not enabled." Id., ¶ 92.

Nichia argues that these allegations ignore the law of enablement under 35 U.S.C. § 112, ¶ 1.   Disclosure of working examples is not required to satisfy the enablement requirement.   See In re Borkowski, 422 F.2d 904, 908 (C.C.P.A. 1970) ("[A] specification need not contain a working example if the invention is otherwise disclosed in such a manner that one skilled in the art will be able to practice without an undue amount of experimentation.").   Further, Everlight's allegation that examples 8 and 12 are 'fictitious' is without merit.   The Manual of Patent Examining Procedure acknowledges that examples described in a specification may either be "working" or "prophetic," i.e., "based on predicted results rather than work actually conducted or results actually achieved." See MPEP §

2164.02 (Sixth Ed., Rev. 3, July 1997).

According to Nichia, at most the inventors can be criticized for not making clear that the two examples were expected to achieve the described results. Everlight's pleading fails the "but-for" materiality test because it does not indicate how a patent examiner would have used these two examples in assessing the patentability of the claims. Exergen, 575 F.3d at 1329-30. Everlight does not allege that the patent examiner relied on either of these examples to support enablement or any other requirement for patentability.

Everlight counters that the claims of unenforceability are focused on one pattern of misconduct, the claims were diligently investigated and are precisely the type of claims Exergen and Therasense were meant to protect, not eradicate.

Everlight maintains that they have alleged "but-for" materiality. Gadolinium and indium are members of "Markush" groups in each of the independent claims of the '925 Patent. See, e.g., '925 Patent, Claim 1 ("What is claimed is: 1. A light emitting device, comprising a light emitting component and a phosphor capable of absorbing a part of light emitted by the light emitting component and emitting light of wavelength different from that of the absorbed light; wherein said light emitting component comprises a nitride compound semiconductor . . . and said phosphor contains a garnet fluorescent material comprising 1) at least one element selected from the group consisting of Y, Lu, Se, La, **Gd**, and Sm, and 2) at least one element selected from the group consisting of Al, Ga and **In** . . . .") (emphasis added).

"A Markush group is a listing of specified alternatives of a group in a patent claim." Abbott Labs. v. Baxter Pharm. Prods., 334 F.3d 1274, 1280 (Fed. Cir. 2003). Claims containing Markush groups require enablement support for each member of the Markush

-13-

group.  In re Fouche, 439 F.2d 1237, 1242 (C.C.P.A. 1971).  Here, each independent claim of the '925 Patent expressly claims LEDs that use a phosphor consisting of only gadolinium from the first Markush group and/or indium from the second Markush group.  The fictitious phosphors disclosed in Examples 8 and 12 are the only support in the '925 Patent for such claimed LEDs.  None of the other examples in the specification addresses such LEDs.  Everlight argues that the claims of the '925 Patent are not enabled because a person of ordinary skill in the art would not be able to make the fictitious phosphors.  See Am. Compl., ¶¶  49, 87-88, 90-91. According to Everlight, it is clear that but for the falsehoods endorsed in the inventors' declarations, the claims encompassing LEDs using the fictitious phosphors would not have issued. See Am. Compl., ¶ 48 ("Upon information and belief, the PTO would not have allowed the '925 Patent to issue but for the misrepresentations and omissions regarding the fictitious experiments."); see also Am. Compl., ¶ 94 ("Upon information and belief, at least claims 1, 14 and 23 of the '925 Patent would not have issued but for the misrepresentations and omissions of the Individuals with a Duty to Disclose.").

Moreover, Nichia omits from its argument that an exception to the requirement of "but-for materiality" was carved out by the Therasense court.  Specifically, the court held that:

> Although but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct, this court recognizes an exception in cases of affirmative egregious misconduct.   This exception to the general rule requiring but-for proof incorporates elements of the early unclean hands cases before the Supreme Court, which dealt with deliberately planned and carefully executed schemes to defraud the PTO and the courts.  When the patentee has engaged in affirmative acts of egregious misconduct, such as filing of an unmistakably false affidavit, the misconduct is material.  After all, a patentee is unlikely to go to great lengths to deceive the PTO with a

falsehood unless it believes that falsehood will affect issuance of the patent.

                  \*                         \*                      \*

By creating an exception to punish affirmative egregious acts without penalizing the failure to disclose information that would not have changed the issuance decision, this court strikes a necessary balance between encouraging honesty before the PTO and preventing unfounded accusations of inequitable conduct.

Id. at 1292-93 (internal citations omitted).  Everlight's inequitable conduct claims are based on allegations that the inventors of Nichia's patents-in-suit affirmatively represented falsehoods about production and testing of at least a total of 200 LEDs using fictitious phosphors in order to use these fictitious phosphors within the scope of every claim of the '925 Patent, and swearing to the truthfulness of this information in affidavits submitted to the PTO.  Am. Compl., ¶¶ 41, 43, 47-94.

Nichia refutes Everlight's argument that the examples that were not actually produced fit within the narrow exception to "but-for" materiality carved out in Therasense.  Everlight cannot credibly argue that describing predicted results in the past tense is akin to the "filing of an unmistakably false affidavit," the example provided by the Therasense court.  Because the exception does not apply, and Everlight has not shown 'but-for' materiality without alleging that the patent examiners relied upon the examples in determining patentability, Everlight has not pled the "how" and "why" of its inequitable conduct allegation.

The court disagrees that Everlight has not established "but-for" materiality.  Nichia relies on the case of SAP Am., Inc. v. Purple Leaf, Inc., No. 11-4601, 2012 U.S. Dist. LEXIS 83531, at  *16 (N.D. Cal. June 15, 2012) in support of its argument that, because Everlight fails to allege that the patent examiners relied on the alleged fictitious phosphors

in determining patentability of the '925 Patent, they fail to meet the materiality requirement for pleading inequitable conduct.  However, <u>Purple Leaf</u> appears to support Everlight's contention that they have alleged "but-for" materiality.  In <u>Purple Leaf</u>, the court concluded that the plaintiff had not alleged "but-for" materiality because "it has not alleged that the PTO would have acted differently if Yadav-Ranjan had not made the misrepresentations she made about ownership and/or assignment of the patent. There are no facts pled showing that 'the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim.'" <u>Purple Leaf</u>, 2012 U.S. Dist. LEXIS 83531, at *16.  Here, Everlight alleges that had the PTO known of the fictitious phosphors, at least independent claims 1, 14 and 23 of the '925 would not have issued.  Am. Compl., ¶¶ 41, 94.

Nichia also maintains that Everlight has not alleged facts to support an inference of specific intent to deceive.  The <u>Therasense</u> court made clear that intent to deceive must be considered independent of materiality, and cannot be inferred solely based on materiality.  <u>See</u> <u>Therasense</u>, 649 F.3d at 1290.  Nichia also argues that the decision in <u>Therasense</u> changed the pleading standard for specific intent to require allegations that the specific intent to deceive must be the single most reasonable inference to be drawn from the facts pled in the complaint.  <u>See</u> Mot. to Dismiss at 9.

The Court rejects this argument.  <u>Therasense</u> involved an appeal of a judgment concluding that one of the patents in the suit was unenforceable, thus <u>Therasense</u> clarified the proof, and not the pleading, required for establishing inequitable conduct – in particular the elements of intent and materiality.  <u>Therasense</u>, 649 F.3d at 1285, 1290 ("[T]o meet the **clear and convincing evidence standard**, the specific intent to deceive must be the 'single most reasonable inference able to be drawn from the **evidence**.'"); <u>see also, Human</u>

-16-

Genome Scis., Inc. v. Genentech, Inc., No. 11-6519, 2011 U.S. Dist. LEXIS 153834, at *9 (C.D. Cal. Dec. 9, 2011) ("Exergen requires the facts in support of an inequitable conduct claim be pled with particularity, [while] Therasense dictates what those facts must be.").

In Human Genome, the court concluded that "the accused infringer must allege facts from which it is plausible that the applicant had an intent to deceive. The inference need not be the most reasonable inference, but merely a reasonable inference beyond the mere possibility that the applicant had an intent to deceive." Human Genome, 2011 U.S. Dist. LEXIS 153834, at *12. In Human Genome, the court dismissed an unenforceability claim because there were no facts alleged to support an inference of specific intent to deceive the PTO, notwithstanding that "the contradiction is apparent" between "one of the inventor's statements to the PTO" and statements in a private letter to a colleague. Human Genome, 2011 U.S. Dist. LEXIS 153834, at *19. The court explained that:

> Any number of reasons could exist for that contradiction–the inventor could have made a mistake in that letter or he could have changed his mind about how to read the data. The point is that HGS cannot show the intent behind the statement from the alleged inconsistency itself. HGS must show something more.

Id. Further, the Human Genome Sciences court held that:

> Another example of HGS' pleading deficiency arises in its allegation that Genentech sought issuance of the Cabilly II patent 'despite knowing that the application was unpatentable.' In that allegation, and the related paragraphs before the allegation, HGS makes several conclusory statements that essentially state that Genentech knew its claims were not valid. But those conclusory statements are merely supported by attorney argument that this Court might rely on to determine the ultimate question of validity. Those statements address the objective question of whether this Court, the PTO, or any reasonable practitioner would believe the patent to be enabled. But nothing in the pleadings describes the subjective states of mind of Genentech and its agent in pursuing the patent. Instead, there is only conjecture that Genentech believed it was not entitled to the patent but pursued it anyway.

-17-

*          *          *

> HGS is entitled to an invalidity defense but without pleading facts that lead to a plausible inference that Genentech subjectively believed that the patent was invalid and pursued it anyway, HGS cannot proceed on its inequitable conduct claim.

Human Genome, 2011 U.S. Dist. LEXIS 153834, at *19-20.

Here, the Court concludes that Everlight insufficiently pleads specific intent.  As described above, Everlight fails to offer any facts to support the inference that any particular individual knew that the experiments set forth in examples 8 and 12 had not been conducted because the phosphors represented by the formulas are chemically unstable. Even if Everlight is correct that examples 8 and 12 are necessary to enable the full scope of the claims in the '925 Patent, Everlight has not alleged that any of the named inventors or employees in Nichia's patent department knew this to be the case.  Without such allegations, the Court cannot infer that the alleged misrepresentations were made with the specific intent to deceive the PTO.[4]

---

[4] Much of Everlight's support for the identity of who committed the misconduct as well as for its specific intent allegations centers on the case of NC State University v. Nichia Corporation, No. 00-cv-702, filed in the United States District Court for the Eastern District of North Carolina.  The NC State case involves different patents than Nichia's patents-in-suit, specifically the '662 Patent, the '839 Patent, the '832 Patent, and the '581 Patent.  Everlight did not include facts concerning the NC State case in its Amended Complaint, stating only that: "Upon information and belief, Nichia has included fictitious experimental data in at least the following patents: U.S. Patent Nos. '839, '662, '832 and '581 . . . ." Am. Compl., ¶ 107.  Apparently, one of the named inventors of these patents, Shuji Nakamura, who is not a named inventor of the patents-in-suit, testified that he intentionally submitted false data in conjunction with 'the '662, the '839, the '832, and the '581 Patents.  After the judge presiding in the NC State case wrote a letter to Assistant Attorney General Peter Kellen about his concern that Mr. Nakamura may have committed perjury, Mr. Nakumura's attorney wrote a letter to Mr. Kellen wherein he claimed that "We will be able to show to you that the patent department at Nichia did all of the patent writing.  We will also be able to show you that fabrications

-18-

Lastly, Nichia argues that Everlight's claim for unenforceability of the '960 Patent is entirely derivative of its allegations concerning the '925 Patent, and thus should be dismissed for the same pleading deficiencies as the '925 Patent.  Further, Everlight has not alleged any inequitable conduct during the preparation and prosecution of the '960 Patent.  Rather, the theory for relief is based on "infectious unenforceability."  However, the '960 Patent claims a different invention, and issued from a divisional application filed several generations after the filing of the '925 Patent application.  Thus, even if the '925 Patent is found to be unenforceable, the '960 Patent would not be affected.  See Baxter Intern., Inc. v. McGaw, Inc., 149 F.3d 1321, 1332 (Fed. Cir. 1998).  The Court agrees that dismissal of Everlight's claim for unenforceability of the '960 Patent is warranted.

IV.    Conclusion

For the reasons discussed above, Nichia's Motion to Dismiss Everlight's claims for declaratory judgment of unenforceability of Nichia's Patents [#24] is GRANTED.  Without identifying a specific individual or individuals who had knowledge of the fictitious testing and phosphors represented in the '925 Patent application, this Court cannot reasonably infer that a specific individual "(1) knew of the withheld material information or of the falsity of the

---

and made up data in the U.S. patents were created by employees of Nichia and not Dr. Nakumura."  See Everlight's Br. in Opp., Exs. A and B.  Everlight argues that several of the patents in the NC State case were filed about a year prior to the filing of the '925 Patent and were prosecuted around the same time as the '925 Patent.  Thus, Everlight theorizes that this demonstrates a pattern of submitting false data by Nichia and its employees.  However, this evidence comes from internet sites and thus is hearsay, and does not involve the patents at issue herein.  Furthermore, Everlight argues that the validity of Nichia's patents are being successfully challenged in several global forums, including Japan where one of Nichia's patents, a counterpart to the patents at issue here, was invalidated.  These facts are not included in the Amended Complaint, and in any event, are irrelevant to whether Nichia engaged in inequitable conduct.

material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." <u>Exergen</u>, 575 F.3d at 1328-29.

Counts III and VI are dismissed.

SO ORDERED.

Dated:  November 2, 2012

<u>/s/ Gershwin A. Drain          </u>
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE