UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVERLIGHT ELECTRONICS CO., LTD.,
and EMCORE CORPORATION,

                                                    Civil Action No.12-cv-11758
                    Plaintiffs and              HONORABLE GERSHWIN A. DRAIN
                    Counter-Defendants,

v.

NICHIA CORPORATION, and
NICHIA AMERICA CORPORATION,

                    Defendants and
                    Counter-plaintiffs,

v.

EVERLIGHT AMERICAS, INC.,

                    Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [#60], DENYING DEFENDANTS' MOTION TO STAY AND SEVER THE '215 PATENT CLAIMS AND COUNTERCLAIMS [#62] AND ADOPTING PLAINTIFFS' PARAGRAPHS 6(F)(3) AND (7) AND REQUIRING THE PARTIES TO SUBMIT A STIPULATED PROTECTIVE ORDER NO LATER THAN MAY 1, 2013**

I.      **INTRODUCTION**

        On April 19, 2012, Plaintiffs Everlight Electronics Co., Ltd.'s and Emcore Corporation's (hereinafter "Plaintiffs") filed the instant patent infringement action against Defendants, Nichia Corporation and Nichia America Corporation (hereinafter "Defendants").   The parties are direct business competitors in the manufacture and supply of light-emitting diode ("LED") products. Presently before the Court is Plaintiffs' Motion for Leave to File Second Amended Complaint, filed on February 20, 2013.  Plaintiffs seek to add inequitable conduct counts to the Second Amended

Complaint.  They argue their proposed amendment addresses the inequitable conduct pleading deficiencies identified by this Court's November 2, 2012 Order dismissing Plaintiffs' claims from the First Amended Complaint. *See* Dkt. No. 50.  Defendants counter that Plaintiffs request should be denied, not only because it is their third bite at the apple, but also because the proposed amendment does not address the specific intent nor the materiality pleading deficiencies identified by the Court's order, thus the amendment is futile and would not withstand a Rule 12(b)(6) motion to dismiss.

Also, before the Court is Defendants' Motion to Stay and Sever the '215 Patent's claims and counterclaims, filed on February 25, 2013.  Defendants argue that the Court should stay all the proceedings concerning the '215 Patent pending the United States Patent and Trademark Office's (PTO) reexamination of the '215 Patent and resulting determination concerning validity of its claims.  Defendants further maintain that the '215 Patent claims and counterclaims should be severed from this action pursuant to Rule 21 of the Federal Rules of Civil Procedure.  Plaintiffs argue that a stay and severance of the '215 Patent claims will be severely prejudicial, as well as will not simplify the issues before the Court, thus both requests should be denied.

Additionally, the parties have submitted memoranda concerning their dispute over two provisions in their proposed protective order.  Specifically, the parties have been unable to mutually agree on a party's use of non-confidential information (paragraph 6(F)(3)) and a prosecution bar prohibiting Plaintiffs' attorneys from prosecution activities before the PTO (paragraph 7).

These matters are fully briefed and the Court finds that oral argument will not aid in the resolution of these matters.  Accordingly, these matters will be resolved on the briefing submitted. *See* E.D. Mich. L.R. 7.1(f)(2).   For the reasons that follow, Plaintiffs' Motion for Leave to File

Second Amended Complaint is granted, Defendants' Motion to Stay and Sever the '215 Patent claims is denied.  Lastly, the Court adopts Plaintiffs' proposed protective order.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2012, Plaintiffs filed the instant action for patent infringement of their  patent entitled "Contact to N-GaN with Au Termination," United States Patent Number 6,653,215 ("'215 Patent"), and seeking declaratory judgment of non-infringement, invalidity and unenforceability of Defendants' patent entitled "Light Emitting Device Having a Nitride Compound Semiconductor and a Phosphor Containing a Garnet Fluorescent Material," United States patent number 5,998,925 ("'925 Patent"), and a declaratory judgment of non-infringement, invalidity and unenforceability of Defendants' patent entitled "Light Emitting Device with Blue Light LED and Phosphor Components," United States patent number 7,531,960 ("'960 Patent") (collectively "patents-in-suit").

Plaintiffs filed a First Amended Complaint on June 18, 2012.  On July 18, 2012, Defendants filed their Answer asserting an affirmative defense of non-infringement and invalidity of the '215 Patent, as well as raised counterclaims of infringement of their patents-in-suit.   Also on July 18, 2012, Defendants filed a Motion to Dismiss Plaintiffs' claims of unenforceability, Counts III and VI, of the First Amended Complaint.  Before the pending motion to dismiss was resolved, this matter was reassigned to the undersigned on October 3, 2012.

Meanwhile, on September 16, 2012, Defendants filed a Petition for *inter partes* review of all claims of the '215 Patent, which was the first day this procedure became available at the PTO.  This Court held a status conference on October 25, 2012, and entered a Scheduling Order the next day setting various deadlines and dates, most relevant for the purposes of the present motions

include the following:

| | |
|---|---|
| Join Additional Parties and Amend Pleadings: | February 20, 2013 |
| Exchange of Prop. Terms and Claims for Construction: | April 12, 2013 |
| Fact Discovery Cutoff: | October 15, 2013 |
| Dispositive Motion Cutoff: | February 26, 2014 |
| Trial: | June 16, 2014 |

Thereafter, on November 2, 2012, the Court entered an Order Granting Defendants' Motion to Dismiss counts III and VI of the First Amended Complaint. The Court's Order found that Plaintiffs failed to plausibly allege that Defendants' patents were unenforceable based on purported inequitable conduct before the PTO because the allegations failed to sufficiently identify the actor who engaged in the misconduct before the PTO, nor that such individual withheld or misrepresented information with the specific intent to deceive the PTO. *See* Dkt. No. 50 at 10-11, 16-18, and 20. The Court also rejected Plaintiffs' claim of "infectious unenforceability" relative to the '960 Patent. *Id.* at 19.

On November 5, 2012, the parties exchanged their preliminary infringement contentions. Defendants' invalidity contentions cover all the same grounds asserted in its Petition before the PTO. Additionally, Defendants' invalidity contentions include defenses such as laches, waiver, estoppel, and lack of standing and ownership of the '215 Patent. Discovery has just started in this matter. The parties have propounded written discovery requests, but few documents have been produced because the parties have yet to agree on a protective order nor on an agreement for the storage of electronically stored discovery information.

On February 12, 2013, the PTO granted Defendants' Petition for *inter partes* review of the '215 Patent. In its decision, the PTO stated "we determine that Nichia has demonstrated sufficiently that there is a reasonable likelihood that it will prevail with respect to the challenge of claims 1-17."

-4-

## III.   LAW & ANALYSIS

### A.   Plaintiffs' Motion for Leave to File Second Amended Complaint

After an answer to the complaint has been filed, Federal Rule of Civil Procedure 15(a) provides that a party may file an amended complaint "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Rule 15(a) provides that such "leave shall be freely given when justice so requires." *Id.* Rule 15 "reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

The United States Court of Appeals for the Sixth Circuit has identified various factors that this Court must consider when determining whether to grant leave to amend:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (citing *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). "[W]hen there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny the motion." *U.S. v. Marsten Apartments, Inc.*, 175 F.R.D. 257, 260 (E.D. Mich. 1997).

Plaintiffs argue that they have not unduly delayed in seeking amendment. The Court's scheduling order set February 20, 2013 as the cut off date for amending the pleadings. Discovery is in its infancy, thus this is not a situation where discovery needs to be reopened. Any discovery associated with the inequitable misconduct claims does not reach beyond the subject matter of the

patents-in-suit.  Thus, there is no prejudice to Defendants.

Defendants counter that Plaintiffs' motion should be denied because they have repeatedly failed to cure the deficiencies in their inequitable conduct allegations.  Plaintiffs have attempted to plead inequitable conduct on two previous occasions, however both times their claims were implausible under the pleading standards for inequitable conduct under *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) and *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011). Defendants further argue that the proposed amendment is futile because it still fails to meet the heightened pleading standards required by *Exergen* and *Therasense*, therefore it cannot defeat a Rule 12(b)(6) motion to dismiss.

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1287.  Both elements-intent and materiality-must be established by clear and convincing evidence.  *Id.*  The *Exergen* court held that "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Exergen*, 575 F.3d at 1327.

While "knowledge" and "intent" may be alleged generally, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Id.* at 1328-29.  To adequately plead materiality, the allegations must "explain both 'why' the withheld information is material and not cumulative, and

-6-

'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329-30. "[A]ffirmative representations by the patentee, in contrast to misleading omissions, are more likely to be regarded as material." *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1367 (Fed. Cir. 2003).

Here, the Court finds that the proposed amendment addresses and remedies the inequitable conduct pleading deficiencies identified by the Court in its November 2, 2012 Order. As an initial matter, the Court notes that it has already determined that the allegations raised in the First Amended Complaint sufficiently pled "but for" materiality. *See* Dkt. No. 50 at 16-18. The Court concludes that the Second Amended Complaint likewise sufficiently alleges that had the PTO known of the fictitious phosphors and fabricated examples, independent claims 1 and 23 of the '925 Patent and claim 14 of the '960 Patent would not be allowed due to lack of enablement under 35 U.S.C. § 112,¶1, as well as would not be allowed pursuant to 35 U.S.C. §§ 101,102(f).

Further, the proposed amendment identifies the specific individuals and their deliberate misrepresentations made with the intent to deceive the PTO. There are sufficient "facts from which it is plausible that the applicant had an intent to deceive." *Human Genome Scis., Inc. v. Genentech, Inc.*, No. 11-6519, 2011 U.S. Dist. LEXIS 153834, at *12 (C.D. Cal. Dec. 9, 2011). Specifically, the '925 Patents' Inventors, Yasunobu Noguchi ("Noguchi"), Kensho Sakano ("Sakano") and Yoshinori Shimizu ("Shimizu"), knew that the '215 Patent claimed subject matter that none of the named inventors actually invented and claimed fictitious experimental data and results to defraud the PTO. *See* Sec. Am. Compl., ¶¶149-276, 334-406.

In particular, the proposed amendment identifies a separate patent application filed by Noguchi with Japan's Patent Office, patent number H10-36835 ("'835 Patent"), which Plaintiffs

assert was filed the same day as the filing of the first application to which the patents-in-suit claim priority. In this application, Noguchi concludes, based on experimental data, that full replacement of yttrium with gadolinium in YAG composition by the methods disclosed in the patents-in-suit would not work to emit light. *See* Sec. Am. Compl., ¶¶52-57, 156-61. Thus, Plaintiffs have alleged that Noguchi knew he did not invent or enable the LEDs using full substitution of yttrium with gadolinium by the methods of the patents-in-suit, and that this would not work to emit light. Further, the Second Amended Complaint alleges that Shimizu and Sakano were aware of Noguchi's data and conclusions disclosed in the '835 Patent. Specifically, both inventors incorporated substantial disclosures from the '835 Patent application, however they chose not to carry over the disclosure that the full substitution of yttrium with gadolinium would not work to emit light. *Id*. at ¶¶ 193, 204, 234, 245, and 274.

Additionally, Plaintiffs have alleged that all three inventors had specific intent based on the fact that over half of the examples included to support enablement contain demonstrably false and fictitious data results. Noghuchi, Sakano and Shimizu are alleged to have personal knowledge that independent claims 1 and 23 of the '925 Patent and claim 14 of the '960 Patent, which cover full gadolinium substitution, included within their scope subject matter that none of the named inventors actually invented. *Id.* at ¶¶ 42, 95-112, 334-406. Similarly, these same inventors knew that claims 1 and 23 of the '925 Patent, covering full indium substitution, included within their scope subject matter that none of the named inventors had actually invented. *Id. at* ¶¶ 164-67, 176, 178, 205-07, 213, 220, 246, 253, 258 and 260. The Second Amended Complaint describes that these inventors used five other examples of LED experiments containing false data and overstated performance measurements in order to deceive the PTO.

-8-

Defendants argue that the '835 Patent application was actually published in 1998 and was public record at the time Plaintiffs filed this action in April of 2012, thus the motion to amend should be denied on this basis alone. They also insist that the '835 Patent application does not support an inference of specific intent to deceive the PTO. However, the Court concludes that a plausible inference that can be drawn from the amended allegations is that the inventors knew that full substitution as described in the patents was not possible, knew they had not achieved full substitution in the multiple examples provided in their work, and knowingly claimed full substitution as part of their invention to the PTO. Furthermore, the Court finds that Defendants' arguments attacking Plaintiffs' specific intent allegations are appropriate for a Rule 56(c) motion for summary judgment, and not at this stage of the proceedings.

For instance, Defendants argue that the '835 Patent does not support the conclusion that Noguchi, or any of the other inventors, knew that the full substitution of yttrium with gadolinium would not work to emit light relying on a variety of hypothetical reasoning. In support, Defendants rely on  Table 1 of the '835 Patent application to suggest that a phosphor with full substitution of yttrium with gadolinium was not made. Thus, Defendants theorize, Plaintiffs cannot establish that Noguchi knew full substitution would not work to emit light.

In further support of their contention that Plaintiffs have not sufficiently alleged specific intent, Defendants argue that Noguchi was not the only named inventor of the '835 Patent, thus his co-inventor could have had the knowledge concerning full substitution that Plaintiffs attribute solely to Noguchi. Additionally, the patents-in-suits' inventors are Japanese, therefore they are unfamiliar with U.S. patent laws and their use of *Markush* group language.

Defendants remaining hodgepodge of reasons why amendment would be futile are similarly

-9-

inappropriate to resolve at this stage of the proceedings.  Specifically, Defendants argue that the ‘835 Patent application cannot be compared with the ‘925 Patent because Figure 3's phosphor composition is not the same as Example 8's phosphor composition.  Figure 3 includes only aluminum and the phosphor composition in Example 8 includes 50% aluminum and 50% gallium. Lastly, Defendants argue that claim 14 of the ‘960 Patent's specification shows enablement with wavelengths of 510 to 600 nm in Embodiment 2, thus Plaintiffs' mischaracterize the scope of the ‘960 Patent.

Because all of Defendants arguments are suited for summary judgment or trial proceedings, the Court declines to address these arguments.  At this stage of the proceedings, the Court is required to accept Plaintiffs' well pleaded factual allegations as true and view these facts in the light most favorable to Plaintiff.    Based on the above analysis, the Court finds that the Second Amended Complaint's allegations permit a reasonable inference that Noguchi, Sakano and Shimizu misrepresented and omitted material information with the specific intent to deceive the PTO.  Thus, Plaintiffs' proposed inequitable conduct claims are not futile and have satisfied the pleading standards set forth in  *Exergen* and *Therasense*.  Plaintiffs' Motion for Leave to File Second Amended Complaint is therefore granted.

**B.    Defendants' Motion to Stay and Sever the ‘215 Patent Claims
and Counterclaims Pending *Inter Partes* Review**

Defendants argue that the Court should stay all the proceedings concerning the ‘215 Patent pending the outcome of the *inter partes* review by the PTO.  Defendants assert that all three factors this Court must consider to determine the propriety of a stay weigh in favor of granting a stay. Specifically, Defendants argue that a stay will not unduly prejudice or present a clear tactical disadvantage to Plaintiffs, as well as will simplify the issues before the Court.  Defendants further

argue that the claims and counterclaims of the '215 Patent should be severed from this action and should proceed as a separate action pursuant to Rule 21 of the Federal Rules of Civil Procedure. Defendants maintain that there are few or no overlapping common issues between Defendants' patents-in-suit and the '215 Patent, thus there is no judicial economy in keeping them in the same action.

### 1. Stay

District courts "have the broad discretion to stay discovery until preliminary questions that may dispose of the case are determined." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 2007). It is the party requesting the stay that "bears the burden of showing that the circumstances justify the exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances justify the exercise of that discretion." *Indiana State Police Pension Trust v. Chrysler LLC*, 129 S.Ct. 2275, 2776-77 (2009) (citations omitted). "The propriety of a stay is dependent upon the circumstances of the particular case, and the traditional stay factors contemplate individualized judgments in each case." *Id.*

In patent cases, courts have the inherent and discretionary authority to stay litigation pending reexamination. *See Ethicon Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their docket and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."). "[T]here is a liberal policy in favor of granting motions to stay proceeding pending the outcome of USPTO reexaminations or reissuance proceedings." *ASCII Corp. v. STD Ent. USA, Inc*., 844 F.Supp. 1378, 1381 (N.D. Cal. 1994);

*Magna Donnelly Corp. v. Pilkington N. Am., Inc.*, No. 06-cv-126, 2007 U.S. Dist. LEXIS 17536, *2 (W.D. Mich. March 12, 2007).

Courts must consider the following factors when determining whether to stay a case pending reexamination, "'whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (2) whether discovery is complete and a trial date has been set.'" *Visual Interactive Phone Concepts, Inc. v. Samsung Telecomms. Am., LLC*, No. 11-12945, 2012 U.S. Dist. LEXIS 42857, *6-7 (E.D. Mich. March 28, 2012) (quoting *Magna Donnelly Corp.*, 2007 U.S. Dist. LEXIS 17536, at *2 (W.D. Mich. March 12, 2007)).

a)    **Prejudice**

Defendants argue that Plaintiffs will not suffer prejudice from a stay. Plaintiffs counter that Defendants are seeking a tactical advantage by requesting this matter proceed with the infringement claims concerning Defendants' patents-in-suit, but stay and sever Plaintiffs' infringement claims relative to the '215 Patent. Thus, Plaintiffs oppose resolving the infringement claims raised herein in separate trials.

Here, the Court finds that a stay would be unreasonably prejudicial to the Plaintiffs in light of the procedural posture of this action. The PTO will issue its decision no later than February 16, 2014, or two weeks before the cut off for dispositive motions and four months before trial. Therefore, the Court can incorporate the PTO's decision into its adjudication of the parties' infringement claims. Conversely, a stay will require Plaintiffs to proceed with two separate trials, resulting in an obvious tactical advantage to Defendants who will have the benefit of litigating their infringement claims in front of a jury that does not know Defendant is similarly accused of patent infringement. *See Visteon Global Tech., Inc. v. Garmin Intern., Inc.*, No. 10-cv-10578, 2013 WL

-12-

434135, *2 (E.D. Mich.  Feb.  4, 2013) (finding a stay inappropriate because the plaintiffs "will be in the unenviable position of having to potentially ramp up twice for a trial on the merits .. [which shows] clear prejudice and tactical disadvantage."). Situations such as this have been found to be "unreasonable" because they prejudice the non-movants, who would face infringement allegations while being deprived of their own during the stay. *See Fujitsu Ltd.  v.  Nanya Tech.  Corp*., No.  06-6613, 2007 WL 3314623, *3 (N.D. Cal.  Nov.  6, 2007); *see also Nokia Corp.  v.  Apple Inc*., No. 09-791, 2011 WL 2160904, *1 (D. Del. June 1, 2011) ("The court further concludes that a partial stay regarding Apple's claims would not simplify the case because the majority of this case will proceed regardless of whether Apple's claims are stayed."); *Life Techs.  Corp.  v.  Illumina, Inc*., No. 09-706, 2010 WL 2348737, *3 (D.  Del.  June 7, 2010) ("The prejudice that would result from the indefinite nature of the stay is increased by the fact that the stay would apply to the four counterclaim patents while the three patents alleged in the Complaint would continue on.")

Additionally, Plaintiffs will be further prejudiced because they are direct competitors with Defendants in the LED industry.  Courts routinely deny requests for stay during the pendency of PTO proceedings where the parties are direct competitors.  *See ADA Solutions, Inc.  v.  Engineered Plastics, Inc*., 826 F. Supp.2d 348, 351-52 (D.  Mass.  2011) ("Compounding the prejudice that a stay would work on ADA Solutions is the fact that the parties are direct competitors in a relatively narrow sector of the ADA-compliance industry."); *see also Cooper Notification, Inc.  v.  Twitter, Inc.*, No.  09-865, 2010 WL 5140573, *2-5 (D.  Del.  Dec.  13, 2010) ("Courts are reluctant to stay proceedings where the parties are direct competitors."); *Tesco Corp.  v.  Weatherford Int'l, Inc*., 599 F.Supp. 2d 848, 852 (S.D. Tex.  2009) (noting that "[w]here the parties are direct competitors, a stay would likely prejudice the non-movant"); *SenoRx v.  Hologic*, No.  12-173, 2013 WL 144255, *8-9

-13-

(D. Del. Jan. 11, 2013).

While Defendants argue that other courts find no impropriety in granting a stay where the parties are direct competitors, those cases are distinguishable from this case. *See Hill-Rom Servs. v. Stryker Corp.*, No. 11-cv-1120, 2012 U.S. Dist. LEXIS 165470, *7-8 (S.D. Ind. Nov. 20, 2012) (denying non-movant's argument of prejudice based on the parties status as direct competitors because the non-movant waited nearly six years to bring its infringement action); *Generac Power Sys. v. Kohler Co.*, 807 F. Supp. 2d 791, 798 (E.D. Wis. 2011) (rejecting the plaintiff's argument that it would face irreparable harm if an injunction was not granted because the parties were competitors); *Hansen Mfg. Corp. v. Enduro Sys.*, No. 11-4030, 2012 U.S. Dist. LEXIS 14061, *14-15 (D.S.D. Feb. 6, 2012) (rejecting non-movant's contention that it would suffer prejudice because the parties were competitors because the non-movant "had yet to enjoy success in the market.")

Plaintiffs argue that Defendants' motion fails to cite any authority where a stay was granted when the parties were direct competitors and where the stay would result in one party's claims proceeding while its competitor's claims were stayed. In their Reply, Defendants cite to *Network Appliance, Inc. v. Sun Microsystems, Inc.*, No. 07-0653,2010 U.S. Dist. LEXIS 20732, *7-8,10, 17-18 (N.D. Cal. Feb. 11, 2010) to support their argument that courts have stayed one party's patent claims and permitted its direct competitor to proceed with its infringement claims against the other party. However, *Network Appliance* is distinguishable from the facts of this case. In *Network Appliance*, the court had previously denied the defendant's request for stay on two previous occasions. *Network Appliance,* 2010 U.S. Dist. LEXIS 20732, *at 5. Further, neither party was left with no cross-claims of infringement, thus there was no tactical disadvantage because both parties

-14-

had remaining patents in the suit. *Network Appliance*, 2010 U.S. Dist. LEXIS 20732, *at 18.

Based on the foregoing considerations, the Court concludes that the prejudice to Plaintiffs favors denying a stay.

### b)   Simplification of Issues

As to the second factor, whether a stay will simplify issues for trial, courts have noted that "the primary purpose of the reexamination procedure is to 'eliminate trial of that issue or to facilitate trial of that issue by providing the district court with the expert view of the [USPTO].'" *Donnelly*, 2007 U.S. Dist. LEXIS 78055, at *11; *see also Ethicon*, 849 F.2d at 1426. In *Visual Interactive Phone Concepts, Inc. v. Samsung,* No. 12945, 2012 U.S. Dist. LEXIS 42857, *11-12 (E.D. Mich. March 28, 2012), the court recently issued a stay in part due to "the probability that some changes will be made [and] it is an improvident use of the Court's time to interpret a phrase that is later modified during the reexamination proceeding, thus effecting the Court's construction." *Visual Interactive*, 2012 U.S. Dist. LEXIS 42857, at *11-12.

However, "to truly simplify the issues . . . the outcome of the reexamination must finally resolve all issues in the litigation." *Esco. Corp. v. Berkeley Forge & Tool, Inc.*, No. 09-1635, 2009 WL 3078463, *2-4 (N.D. Cal. Sept. 28, 2009) (citations omitted). "If regardless of the result of the reexamination, there are still claims or counterclaims that need to be resolved by the Court, then reexamination clearly fails to provide final resolution." *Largan Precision Co. Ltd. v. Fujifilm Corp.*, No. 10-1318, 2011 WL 794983, *at 4 (N.D. Cal. March 1, 2011). Thus, where "the scope of the issues to be resolved during litigation substantially exceeds the scope of the issues that can be resolved during the reexamination proceedings, this factor disfavors a stay." *ImageVision.Net, Inc. v. Internet Payment Exch.*, No. 12-054, 2012 WL 3866677, *1-5 (D. Del. Sept. 4, 2012)

-15-

Defendants argue that a stay will save the Court's resources by eliminating certain issues from claim construction, or eliminating the need for claim construction altogether. *See Magna Donnellly*, 2007 U.S. Dist. LEXIS 17536, at *10 ("Courts routinely have recognized the benefits [] of having USPTO expertise and experience to inform patent trial proceedings."). Defendants assertion requires this Court to assume that all or many of the '215 Patent claims will be invalidated. However, under both the new and old reexamination procedures, the PTO grants roughly 93% of petitions, yet 58% of those cases result in either certification without modification or some, but not all, of the claims are issued with changes. In 42% of cases, claims are cancelled.

Further, as already noted a stay is likely to require two trials and such an outcome is disfavored because "[i]ssuing a partial stay would likely result in greater costs and delay by requiring [Plaintiff] to proceed with two separate patent litigations in this Court, [where] [t]here would be clear efficiencies gained for the Court and the parties from trying the issues concerning the two similar patents in a single case, rather than substantially duplicating proceedings." *Largan Precision*, 2011 WL 794983, at *4. It is unreasonable for Defendants to argue that their patents-in-suit and the '215 Patents are wholly unrelated when both relate to LED technology and the parties are direct competitors in the market.

Lastly, a stay will not simplify the issues related to the '215 patent because Defendants have asserted defenses such as laches, waiver, estoppel, and standing which will not be reviewed by the PTO. *See Pentair Water Pool and Spa, Inc. v. Hayward Industries, Inc*., No. 11-cv-459, 2012 WL 6608619, *2-4 (E.D. N.C. 2012) (denying a stay because the court was required to consider a broader range of evidence than the PTO). In *Pentair*, the court held in pertinent part:

> [T]he court is empowered to consider a much larger body of evidence and more arguments for invalidity than the PTO. Thus, the output of the reexamination, other

> than cancellation of the claims, does not provide an exact guide for the court to follow . . . . [A]ny surviving claims would require the court to consider arguments about invalidity, and under a different standard and on different evidence from that used by the PTO.  In that case, the stay would not preserve much of the Court's resources.

*Pentair Water Pool and Spa*, 2012 WL 6608619, at *2-4.  Beyond the PTO's guidance regarding cancellation or modification, its decision will be of little value in resolving the '215 Patent claims and counterclaims.  Accordingly, this factor does not weigh in favor of a stay.

### c)   Discovery Progress and Trial Date

Defendants also assert that the current stage of these proceedings weighs in favor of granting a stay. Defendants rely on the fact that discovery is in its infancy, no depositions have been taken and the parties' written discovery exchanges have been hampered by their inability to agree on a protective order, the Court has yet to conduct claim construction nor have the parties submitted their briefing because they have just recently exchanged terms to be construed, and lastly, trial is nearly fourteen (14) months away.

However, these factors actually weigh in favor of denying a stay because this case is in its infancy and the PTO decision will issue no later than February of 2014,  thus the Court can incorporate the PTO's decision into this Court's judgment in this case.  Likewise, the parties can include the PTO's conclusions concerning the validity of the '215 Patent's claims in their briefing in support of summary judgment.  While there is a risk that the parties will engage in needless discovery, it is more likely than not that some of the '215 Patent claims will be confirmed, therefore discovery will likely be taken in any event.  Thus, contrary to Defendants' assertion, this factor weighs in favor of denying the stay.

Based on the above analysis, the Court concludes that Defendants have failed in their burden

-17-

demonstrating that a stay of the '215 Patent claims and counterclaims pending *inter partes* review is warranted. Therefore, Defendants' Motion for a Stay is denied.

### 2.      Severance of the '215 Patent Claims and Counterclaims

Defendants further argue that the Court should sever the '215 Patent claims entirely from this action pursuant to Rule 21 of the Federal Rules of Civil Procedure. Defendants maintain that their patents-in-suit are markedly different from the '215 Patent, thus there is no judicial economy in keeping the patents in the same action. Plaintiffs counter that Defendants are splitting hair when they assert that the patents are different because both Defendants' patents-in-suit and the '215 Patent relate to LED technology, both parties' prior art will be drawn from the same industry sources and inventors, and both parties' damage theories will rely on the same type of evidence about the industry and the market of products.

Rule 21 states: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. District courts have broad discretion whether to sever a claim under Rule 21. *See United States v. O'Neil*, 709 F.2d 361, 367 (5th Cir. 1983). "Application of Rule 21 involves consideration of convenience and fairness." *Cellectricon AB v. Fluxion Biosciences, Inc.,* No. 09-03150, 2011 U.S. Dist. LEXIS 46634, at *9 (N.D. Cal. Apr. 25, 2011). "A claim may be severed if it will serve the ends of justice and further the prompt and efficient disposition of the litigation." *CVI/Beta Ventures v. Custom Optical Frames*, 896 F.Supp. 505, 506 (D. Md. 1995).

The Court concludes that severance will not serve the ends of justice nor further the prompt resolution of the issues raised herein. The Court discerns no benefit to resolving the parties' patent disputes in separate proceedings. The prejudice considerations concerning a stay are equally

compelling in determining whether severance is warranted.  Because the Court concludes that requiring Plaintiffs to maintain separate actions is prejudicial, as well as taxing on the Court's limited resources, the Court will exercise its broad discretion and deny Defendants request to sever the '215 Patent claims and counterclaims from this action.

###    C.    Protective Order

Finally, the parties have unsuccessfully attempted to agree on a protective order regarding the exchange of confidential and proprietary information.  Both parties have submitted briefing in support of their respective positions concerning two provisions in their proposed agreement.  Upon review of the parties' submissions, the Court finds that Plaintiff's proposed paragraphs 6(F)(3) and (7)  prevent the inadvertent disclosure of proprietary information.  Conversely, Defendants' proposed version of paragraph 6(F)(3) will lead to unnecessary disputes and Defendants have not demonstrated good cause for the prosecution bar they seek in their proposed paragraph (7).

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Leave to File Second Amended Complaint [#60] is GRANTED.

Defendants' Motion to Stay and Sever Claims [#62] is DENIED.

The parties shall use Plaintiff's proposed protective order.  The parties shall submit their stipulated protective order to the Court via the utilities function on CM/ECF no later than May 1, 2013.

SO ORDERED.

Dated: April 30, 2013                          /s/Gershwin A Drain
                                               GERSHWIN A.  DRAIN
                                               UNITED STATES DISTRICT JUDGE